What time is your afternoon? I don't think we have that today. It's tomorrow. Do you have an afternoon today? I don't think so. Let's see. That is tomorrow. Okay. Better catch us before we fall asleep. It's been a long, long morning for us. May it please the Court, Your Honor. My name is David Messina. I represent NCC, the appellant in this case. Your Honor, we're here because the bankruptcy court completely invalidated NCC's $9.5 million mortgage based upon a motion for summary judgment that was filed by Investar Bank, a different lien holder that was a complete stranger to the mortgage agreement between the parties. Let me cut to the chase. Life is hard. And it looked to me, and I'm not a Louisiana lawyer, so you'll have to correct me, but the bankruptcy court didn't think much of your argument. The magistrate judge didn't think much of your argument, and the district judge didn't think much of your argument. And what occurs to me is that you're trying to use the bankruptcy court as a forum to achieve a reformation. Your Honor, I don't think we're doing that at all. And I think the reason why the bankruptcy court and the district court, where they made their big mistake, was through the application of the parole evidence rule. The parole evidence rule, and this has been established in Louisiana law for over 100 years, it does not apply except between the parties to an agreement. I don't disagree with that, but you're in bankruptcy court, and in bankruptcy court you take the documents as you find them at the date of the filing. And the court can't add the strong-arm clause. If we had a trustee in here, a trustee could have invalidated your mortgage too, right? We disagree with that, Your Honor. We believe the trustee has a claim, and that's a point I'd like to make, because that was a big point made in the briefs of the appellees, which we completely object to. The trustee filed a cross-claim against my client under the strong-arm provision and against Investar under the strong-arm provision. That cross-claim, we filed defenses against, they filed defenses against. That was not part of this summary judgment motion. The trustee did not file a summary judgment. They did not move against us. In fact, after the bankruptcy court ruled, the bankruptcy court issued an order specifically stating those actions against us. And, again, those are avoidance actions. It's not just something that takes effect. They have to prove under File 44A3 the requirements of the bankruptcy code, and there are defenses to that, defenses to both of them. So that can't be used as a basis for saying our mortgage is invalid. I mean, the basis that the district court, and this was the real problem, and it got highlighted in the district court. The district court made two errors, significant errors. First, and it actually started out its ruling by saying that this is a dispute between the parties to the agreement. This was not a dispute between the parties to the agreement. We submitted significant evidence that there's never been a dispute between the parties to the agreement, including the fact, Your Honor, that all of the contemporaneous documents that were executed at the time specifically said that this mortgage secured the loan that my client made to Mike Worley. Where does it say that? In the mortgage? Are they recorded? Where does it say that? What you just said, that it secures the loan that Worley made. I'm sure you mean the $8 million loan. Where can I look to find that, that it secures that loan? Your Honor, what we would say is that is in the other parts of the mortgage. There's no question. There is an ambiguity in the specific text.  Where? We cited in our brief, in later pages of the document, it refers to other documents that were incorporated into the mortgage that specifically referred to Mike Worley as the obligor whose debt was secured by the mortgage. The mortgage is not great, Your Honor. I would expect to look at the indebtedness that is secured by the mortgage to figure out what it secures, right? Isn't that defined? Correct, Your Honor. What does it say? The indebtedness says it secures the debts of mortgagor to NCC. And we have a disagreement over whether or not that's ambiguous because of the defined term mortgagor. But, Your Honor, I guess. How can that be ambiguous, who the mortgagor is? Because in a description, one of the reasons is in the description itself, it refers to mortgagor collectively here and after. It says W resources collective and represented here and by Mike Worley collectively here and after referred to as mortgagor as a defined term. Is the word collectively that you think creates the ambiguity in the instrument? No, Your Honor. I guess my main point is we don't think ambiguity is an issue because under the Louisiana Parole Evidence Rule, the reason why the court didn't get to our evidence of the intent of the parties, the Louisiana Parole Evidence Rule is absolutely clear that if a third party to an agreement is trying to attack the agreement, then the evidence of the intent of the parties under the mortgage needs to come in. And that's why the bankruptcy court ruled the way it did. The case that the bankruptcy court relied on was a dispute between the parties. Same thing, the district court relied on three cases. And the district court actually said it thought it was a dispute between the parties. It relied on three cases, all involved disputes between the parties. The parties to the mortgage. The party to the mortgage was W Resources, NCC, but the mortgage was part of a loan transaction. It was a—and Louisiana law allows a company or any party to mortgage its property to secure the debt of the other. NCC and W Resources were the parties to the mortgage. Not the case. NCC NCC and W Resources are the parties to the mortgage. Correct. Is that what I said? Isn't the dispute between the parties to the mortgage about what the indebtedness covers? I don't see where the district court even said that. He says, Apelli Investar Bank, who also owns an interest in the mortgage properties, initiated this adversary proceeding, seeking a determination that its mortgages are first ranking. Correct, Your Honor. I don't see a—that accurately states the posture of the litigation. The district court is not confused about who's bringing suit. Your Honor, what I was saying is the district court made a mistake about what was the issue. This is what the district court said. This matter turns on the parties' competing interpretations of the mortgage, specifically whether the parties intended the mortgage to secure the loan agreement and promissory note. The parties to the agreement are not the trustee. The parties to the agreement are the people who sat down when they entered into the agreement. And what I'm— You're saying Investar can't invoke the parole evidence bar because it's a third party. Absolutely. But you started out by saying Judge Jackson made two mistakes, that premise and what was the second. The second premise was—and this is the quote. He says, as it happens, Mr. Worley and NCC Financial engaged in a second transaction on October 27, 2015, importantly in the second transaction. And he goes on, he says, W Resources granted the mortgage. There was only one transaction. And the reason why that's significant is that loan would have never been made. Everything, every document associated with that loan, the undisputed intent of the parties is we'll loan you this money. W Resources has all your real estate. W Resources will grant a mortgage to secure the loan. This loan went south in a pretty short period of time. And it would seem to me that that indicates that the debtor was having trouble making payments. And it would seem to me that a reasonable loan officer would have gone to the documents and said, oh, my gosh, we need to reform this instrument. Your Honor, nobody contested the validity of the instrument. Until it mattered. And that's the whole point. But for a third party like Investar to contest it, they're contesting it presumably because they relied on it, on a public records doctrine type issue. That's the only basis for them to contest it. And the significant part of that is their mortgages existed long before NCC ever put a mortgage on that property. So how does Investar claim that they were prejudiced by a mortgage that didn't occur until after their mortgages were already on the property? And that's the whole problem with this public. Trust might be prejudiced, even if they're not. And, Your Honor, the thing is the trust's claim is not before this court. If you look at their summary judgment pleadings, the trust never filed a motion for summary judgment on its pleadings. And so, I mean, that's a pretty standard principle of law is somebody files a motion for summary judgment. And this was a motion for partial summary judgment. You deal with what's before you. The only time that this trust claim showed up was in the briefs that were filed with this court. And the reason is Investar knows they have to show prejudice or they have to show that they in some way relied on this document that they said misled them. They can't rely on something that didn't exist when they got their mortgages. So I understand the bankruptcy principles, and I know Judge Jones writes a lot of opinions on bankruptcy. The problem we have here is our mortgage disappeared, okay? And even if this was a ranking issue, even if Investar said I was prejudiced by what your mortgage said because your mortgage didn't say it secured this debt, even if they could say that they were prejudiced by that way, that's a ranking issue. How does it make our mortgage disappear? There's still an agreement between the parties. It's more of a question of standing, isn't it? In other words, you're saying that if they had the prior lien, you're saying it doesn't matter what the second lien, the later filed lien means. Is that what you're saying? No, Your Honor. What I'm saying is if their basis for saying that our mortgage is no good is because of the public records doctrine, then the public records doctrine requires that they have relied on our mortgage. And you're saying they're a prior lien holder and therefore they didn't rely. Aren't you saying that? Absolutely. Absolutely. That to me goes to their standing, which involves prejudice. How are they injured by their claim against you? Your Honor, I completely agree. And it also goes to the fact that if they're going to use the public records doctrine as a basis to say your mortgage no longer exists, again, I don't think that that's what the public records doctrine does. It says somebody ranks ahead of somebody else. But if they're going to use the public records doctrine, then they have to show prejudice. They didn't put that in their summer judgment pleadings. Well, let's say the thing were flipped and they were the second lien holder and you were the first lien holder. And they could look. I mean, they're going after they have every right to look at your mortgage and say there's no obligation secured here that is covered by your lien. I think then you get into the public records doctrine rules, and Louisiana law has a rule of sufficient notice. If that mortgage puts them on sufficient notice that the property is encumbered or has an interest ahead of them, then that might be sufficient notice that they shouldn't put a mortgage on that property without doing a further investigation. So, Your Honor, I think the big issue here is the whole trustee issue has to be set aside. And I just found that the fact that their brief was littered with all about the bankruptcy code and all about the trustee, that claim is not here. If the trustee had filed a motion for summary judgment and said I think I win because I have 544A strong arm powers, we would be arguing about something different. We would have raised different oppositions to their motion for summary judgment. The only motion for summary judgment that was filed was Investor's motion for summary judgment. And they said in their motion for summary judgment, we don't think, we look at this mortgage now. We look at it now. They didn't look at it before, but now we look at it. And we think that based on this, you don't have a mortgage because there's no debt secured by the mortgage. There's no question there's debt secured by the mortgage. Nobody, they don't contest. They don't contest that there's debt secured by the mortgage because it's in documents, it's in everything that related to that loan transaction. But it's somebody who wasn't mentioned in the mortgage. I'm sorry? It's a person who was not identified in the mortgage. But again, Your Honor, that's a, whether or not there's a dispute under the mortgage. The only way that Investor could raise that is as a third party who says that they relied on it. They can't attack, if they're going to attack our mortgage. I'm sorry, Your Honor. So it's, it'll be Mr. Johnson's opportunity to respond. And you have time for rebuttal. Good morning, Judges Jones, Higgins, and Duncan. My name is Patrick Johnson. I represent Investor Bank and Appelli in this case. I want to address three issues, if I may. Number one, what are the requirements of the Louisiana Public Records Doctrine? They have just been misstated. I'd also like to address Goodrich Petroleum, the decision of this court. Why does this case make any difference to you if you have a prior lien? I don't, well, in the underlying adversary proceeding, in fact, Your Honor, we, I'll cite you to the record. There's an answer in the permanent defenses filed by NCC that states that Investor failed to re-inscribe its mortgage. After NCC's was timely re-inscribed it. After NCC's was recorded. Therefore, the argument is NCC primes us now. I see. So we are very prejudiced. But the point, Your Honor, the point is the Louisiana Public Records Doctrine, first of all, Goodrich Petroleum is the other issue. And then I want to point out one maintenance item. On pages 45 to 46 of Investor's brief, we cite to an amended order of the bankruptcy court and we forgot to refer to the record. It's ROA 905. We apologize for that. The Louisiana Public Records Doctrine doesn't address knowledge. It doesn't address prejudice. It has, I don't know where NCC gets these requirements. They're not in there. Well, a person can't just comb through the mortgage records and file suit on, you know, inadequately described properties or mortgages that are otherwise deficient under Louisiana law, can he? No, you're absolutely correct, Your Honor. But Investor has a very big interest in the two properties that NCC is now claiming it primes its mortgage on. It has a mortgage on those properties. But the mortgage was recorded. So you had sufficient notice there was an encumbrance, right? Well, no. The records protects you against things that aren't recorded, but it doesn't guarantee you the correctness of the contents of what is recorded. Louisiana law just says you, therefore, are on notice of an encumbrance. You were. No, the problem with that, Your Honor, is it says there's a mortgage in the public record for the debts, obligations of W resources. It does not say for the obligations of Michael Worley. There's a specific Louisiana Civil Code article. In fact, NCC claims its benefit when you want to have a mortgage in favor of a third party. This one is not in favor of a third party. It's not in favor of Michael Worley. Under this argument, they could come up with any documents they want later in a bankruptcy case and say, you know, we intended to secure the debt of this other party, too, with the assets of this bankruptcy case. I mean, the debt needs to be described in the mortgage, the obligation, and it was described as the obligations of W resources, not Michael Worley. So it did not meet the requirements of the Louisiana Civil Code to secure the debt of a third party, which is probably oversimplifying. I don't know Louisiana law or bankruptcy laws that well, but I've tried to study this case. Let's assume you look, there's a mortgage. It's recorded. It reflects that there's an encumbrance on this property. But you as a third party, not as a party to the contract, I don't see how you can then keep out parole evidence that would clarify to a level of certainty that the intention was to cover the property was going to secure the $8 million personal loan. Well, because it specifically says, as it's required to identify an obligation that it secures, that it's the obligation of W resources. We can then as a bank, well, let's say subsequently when we re-inscribed our mortgage, that was after it was recorded. This mortgage only secures the debt of W resources. We didn't know that W resources owed nothing to NCC until well into the chapter 11 when the attorneys for the trust, then the debtor in possession, discovered it. So it secures nothing. Under Louisiana law, it is unenforceable. I wouldn't say it's an invalid mortgage. I'd say it's unenforceable because it doesn't secure anything. And you relied on its being unenforceable. You knew it was there. It mentions the $8 million loan, and it talks about collective all being the mortgager, all indebtedness. But your study of it showed that, in fact, there was no collateral for the $8 million loan. And as to this, there was no indebtedness, yet the mortgage was secured. Your Honor, Louisiana public records doctrine doesn't require any of that. We cite many cases in our brief that the reference to other loan documents in the public record is irrelevant. And we don't have to rely on it at any particular time. It does not affect us at all under Louisiana public records doctrine. We're a third party. The estate is a third party under Section 544 of the Bankruptcy Code, now the liquidating trust after a confirmed plan. There's no requirement. Maybe just speak to how do you distinguish their reference to Mitchell and Smith, that you can't invoke the parole evidence bar as a party that was not in the contract? Parole evidence isn't the issue. It's the public records doctrine. Okay. So, all right. Well, I thought Judge Jackson. Judge Jackson did refer to parole evidence. And that's one way of referring to evidence being allowed to change a contract. But the reason it's prohibited is the public records doctrine. And the bankruptcy, the status of the bankruptcy itself as a separate entity. It's just a new game when Chapter 11 is filed. So, my point, my argument. What's your best case? It's not the parole evidence bar. Arguably, Judge Dodd and Judge Jackson were wrong. It's the public records doctrine. What's the case? I thought public records document in Louisiana said you can rely on there being no record. But here you had a mortgage. We're just asking did you have notice there's an encumbrance? Part of the definition requirements of a mortgage is that it secures an obligation. I know that. The obligation is defined as one from W resources. And Judge Dodd did get into the fact that this was a bankruptcy. Now you're dealing with a third party. If it was outside of bankruptcy, no bankruptcy filed, perhaps they could get together. The validity of liens is determined by state law in bankruptcy. The JAB case says you have no lien when you have no debtor identified in the mortgage who owes money. So that's right. Yes. Thank you, Judge Jones, for bringing that up. That is a case that Judge Dodd relied on directly, that we've cited. Technically, I don't know what it means that it's unpublished, but it must mean something. Well, it said that we could – we actually cited the authority to be able to cite that case. In Texas, you can cite unpublished state opinions. This one we could cite because it was on the website or something. We cited authority in our brief as to how we could cite that case. But the case is directly on point, despite NCC's arguments to the contrary. There was a mortgage. It's specifically set as any mortgage. It secures the obligations of – I think it was. I mean, if the point is it was invalid as between the parties, but there's no reason why it shouldn't. Once it's unenforceable, it's unenforceable. I don't see how a third party could be bound by something which is unenforceable between the two original parties. Well, I absolutely agree with you, and that's why Judge Dodd went forward, Judge Jones, and granted our summary judgment where we asked that he declare they have no claim in Chapter 11, much less a mortgage. So they have no claim. There's no obligation owed by the Chapter 11 estate formerly W Resources. So, again, under that – what the public records doctrine says, it's an objective doctrine. It says if you want to affect the rights of a third party, you have to have how you're going to affect those rights recorded concerning immovables, a mortgage, for example, recorded in the public records. If it's not in the public records, it cannot affect third parties. Right, but it was recorded. The issue is whether on analysis it's enforceable or not. Well, it was – what was recorded was a mortgage securing the debt of W Resources, not anybody else. It did not – if it wanted to create an in-rem mortgage, which is what you'd call this, it needed to say it secures the debt of Michael Worley or whatever third party NCC was interested in using the property of W Resources to secure. And now to the detriment of an entire liquidating trust and all the creditors involved, and to say there's no damage, there's no prejudice, I mean the prejudice is all over the place. First we lose – he's arguing, NCC is arguing that my client loses its first mortgage. Well, they're prejudiced too. Well, yeah, well, they drafted the document, Your Honor. I mean, let's keep in mind at the same time they're arguing, we didn't re-inscribe timely. They're trying to prejudice us too. We were first. So this isn't a – let's just – I mean, and why would a bank be doing what we're doing in a bankruptcy court, the district court, now this court didn't seem – feel like it was going to be extremely prejudiced if this was not recognized. Under 544, absolutely. And the trustee's counsel is here. The trustee's an appellee. The trustee has supported the motion for summary judgment. You know, it's part of this. How much is your client owed? Total? Yes. The bank group's owed $17 million. And these properties involved that NCC's trying to become second on are worth about $4 million. I mean, they're trying to become first. Excuse me. By the way, the document they talk about in the record referred to them as a second mortgage, but they're now taking a different position. So, again, and here's another important point. The intentions of the pre-petition debtor and NCC are completely irrelevant. Yeah, especially in bankruptcy. Exactly, because this is now a third party. It's the liquidating trust, and it's a – and this court, in its opinion, since I'm running out of time, in northern – wait, let me – I'm sorry. Just give me one quick second. So I referred to the record for that affirmative defense. It's ROA 419 at paragraph E, where investor claims that we did not re-inscribe our mortgage. 419, paragraph E. The other prejudice, although, again, it's not required, is all the creditors of the liquidating trust would be subjected to their mortgage to secure the property of Michael Worley when it didn't say it did. And it secures only W resources debt, and W resources owes it nothing. Okay. NCC completely ignores this court's decision in Goodrich Petroleum. Investor cited it in the text of its brief. The liquidating trust in its appellate brief cited it. NCC didn't cite it, distinguish it, or otherwise address it in its primary brief or its reply brief. It really precludes NCC's arguments in this case. It says, and Judges Jones and Higginson, you were on the panel, it says that – and interestingly, Judge Duncan, your predecessor wrote the opinion. Well. Who you replaced. I know that's irrelevant. But Goodrich Petroleum precludes NCC's arguments because it specifically applies Louisiana public records doctrine in 544 of the Bankruptcy Code to this type of situation. The established law in this circuit is that any real rights in the immovable property claimed by NCC, but not included in the public records, are not effective against third persons, including Investor and the W resources liquidating trust. As stated by this court in that case, a third person is one who is not a party to or personally bound by an instrument, such as a predator like Investor, such as W resources, who is a third party under 544 of the Bankruptcy Code. So we respectfully request that the court affirm the Bankruptcy Court and the District Court in this case for those reasons. I do want to just respond to a couple of quick points that were made. I think I've adequately, well, the District Court, there was talk about the District Court talking about the parties. There's no issue here that the liquidating trust is a separate party under the Bankruptcy Code and that the estate of a Chapter 11 case is a separate party. It's a third party. And the other thing that Judge Jones focused on, there's no debt, so the mortgages are enforceable. That's the situation there. Okay. Thank you very much. I appreciate it. Thank you, sir. Mr. Brown, do you have anything to add? No. Good afternoon, Your Honors. Brandon Brown for the W Resources LLC Liquidating Trust. We have, the trust has supported Investor in its motion for summary judgment since its inception through its appeal process. I don't have much to add in the way of the, to tag along to Mr. Johnson's discussion of public records doctrine. I would like to say I don't think that NCC has it right. The investor has not moved to invalidate the NCC mortgage on the basis of the public records. What they did was they moved to essentially have the mortgage interpreted under Louisiana law, principles of contract interpretation. Both the Bankruptcy Court and the District Court found that the mortgage was unambiguous and under its terms, only the debts of W Resources LLC were pledged, or the properties were pledged to secure only the debts of W Resources LLC. After that, the question becomes, is there any debt owed by W Resources LLC? There's no note. There's no guarantee. Certainly someone can pledge their property to secure the debt of a third party, but that didn't happen in this case. At its base, I think NCC wants to reform its mortgage. What it says is the debts of W Resources LLC are secured by this mortgage. What NCC wants it to say is the debts of Michael Worley are secured by this mortgage. That's not what it says. Is there a point why Investar carried, but Investar carried the ball here. The trustee could have done it, right? Yes. We could have. Investar moved one or two, and in fact, during the bankruptcy case, the bankruptcy estate moved in motion practice under basically the same, filed the same motion that is in the complaint. NCC, we discussed and we pulled the motion, but eventually once the adversary proceeding was filed by Investar, Investar determined to be the moving party, we supported it. Your Honors, I yield the rest of my time. All right, sir. That's fine. Mr. Messina. I'm going to address a couple of points. First, the JAB case. The JAB case is not this case. What happened in JAB, the mortgagor who was denying that the debt was secured by the mortgage, the mortgagor said, I never granted a mortgage to secure that debt. There was a dispute between the parties. There, there was a person who had a debt that was trying to take advantage of the fact that there was a mortgage that existed and said this is secured by your mortgage. The mortgagor said no. It was a dispute between the parties. There's no dispute between the parties here. The mortgagor and the debtor all agreed that this mortgage was secured by the NCC mortgage. So that case is not on point and it gets to the parole evidence rule. I found it interesting that Investor's Counsel said parole evidence rule is not the issue, but that's the basis upon which the bankruptcy court and the district court ruled. They didn't rule based on the public records doctrine. Mr. Brown, for the trustee, just said they didn't file their motion based upon the public records doctrine. They filed their motion based upon what the intent of the parties was underneath the doctrine, underneath the document, and what the document itself said. In order to interpret that document, Louisiana law is absolutely clear. When a third party is attacking a document, you're entitled to introduce parole evidence. That parole evidence unquestionably shows that that mortgage secured that Mike Worley debt. Part of the problem is, I mean, I read the summary judgment hearing, and I'm sure you remember it, in January 2020. And you specifically asked Judge Dodd, you said, we would ask the court to reform the mortgage and acknowledge the mutual error. Your Honor, I mean, I believe that it's in the transcript. I don't think reformation was the issue. I think part of what the investor did in their moving pleadings, they said, we think that the document has to be reformed. We don't think that the document has to be reformed. You now say you don't. But you told Judge Dodd, we asked the court to reform the mortgage. Okay. So that doesn't look like an ambiguity. Let's refer to parole evidence. It looked like a statement asking the court post-petition to reform the mortgage. Maybe it's just one of alternate arguments. But then that seemed to me why they go off into the parole evidence rule, they being Judge Dodd and Judge Jackson. I think if reformation was an issue, if you look at the rules on reformation, the rules on reformation, again, if you have to reform a document to make it say what the parties intended to say, then you can't do it in prejudice to a third party. Again, there's no prejudice here. The only prejudice I heard and I've heard. My sense to me is if there is prejudice, if you're trying to say they're actually the, they're saying they're the first lien holder now, right? Your Honor, it's interesting because that's the first I heard that the prejudice they claim is based upon their failure to re-inscribe their pre-existing mortgage. That's not prejudice in reliance upon our mortgage. That's their prejudice for their failure to re-inscribe. Well, it wouldn't make a difference if there weren't something that claimed to be prior, though, right? But, Your Honor, I think the prejudice has to apply when they got the original interest. I mean, this, if they're prejudiced, and again, those are claims between the parties. If they're prejudiced because they failed to re-inscribe, then that was their cause. It's not based upon something they did in looking at our mortgage and saying, well, this mortgage didn't secure any debt. And you can't tell, looking at the mortgage, that's the main thing about the public records doctrine is all of the mortgage has to do, any document, recorded document has to do is to provide sufficient notice that the property is encumbered. If it provides sufficient notice, that's good enough for the public records doctrine. Your Honor, what I would say, just in closing, a lot of the arguments that were made are based upon the bankruptcy code and bankruptcy code rights and bankruptcy code issues. That was not part of the summary judgment motion. I would ask, this was a $9.5 million mortgage granted on the summary judgment. I would ask that you please reverse and send it back down and let the bankruptcy court decide it on the floor. What's going to happen? Well, let me just ask you, what would happen if we reversed and remanded? Then I think the— Do you want summary judgment in your favor? Is that what you're saying? Your Honor, I think at that point the bankruptcy court has to consider the evidence that it did not consider in the initial thing because it excluded it. There's no question the court should have considered that evidence. Both courts should have considered that evidence. That's a reversible ground for sending it back down to have the court consider that evidence. At that point, the court can make the decisions about the third party, the parole evidence—I mean, the public records doctrine. That was not the big point in the argument. The point of the argument was what was the intent of the parties under the agreement. That intent was undisputed, Your Honor. Okay. Thank you, Your Honor. Thank you. We'll be in recess until—